47    497
162    353
55a    20

THE OHIO AND MISSISSIPPI RAILROAD COMPANY

*v.*

SAMUEL SHANEFELT.

1. RAILROADS—*diligence required.* Railroads and private individuals, with respect to the same subject matter, are held to the exercise of the same degree of diligence, in preventing injuries to others.

2. RAILROADS—*negligence per se—what is not.* It is not negligence *per se* for a railroad to suffer grass and weeds to accumulate on its right of way; the fact, however, is proper evidence for the jury, who may find negligence from it.

3. SAME—*diligence required of adjoining owners.* Land owners contiguous to railroads are as much bound, in law, to keep their lands free from an accumulation of dry grass and weeds as railroad companies are; so where a fire is ignited on the company's right of way, and is communicated to fields adjoining, the negligence of such owner will be held to have contributed to the loss.

4. SAME—*not liable unless negligence is greater.* And unless it appears that the negligence of the company is greater than that of such land owner, the latter can not recover for injuries thus arising.

APPEAL from the Circuit Court of Marion county; the Hon. SILAS L. BRYAN, Judge, presiding.

The facts of this case are fully stated in the opinion of the court.

Mr. H. P. BUXTON for the appellants.

Messrs. WILLARD & GOODNOW for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of trespass on the case, brought by appellee, in the Marion Circuit Court, against the appellants.
63—47TH ILL.

The declaration avers that appellee was the owner of one thousand rails, and twenty acres of meadow, situated on his farm, of the value of two hundred dollars; that appellants owned, and operated, a railroad running through the farm; that appellants owned the right of way fifty feet in width on each side of their track; that it was the duty of appellants to keep the right of way free and clear from dry grass, weeds, &c., to prevent fire from communicating from their engines, to such dry grass, and thence to the meadow; but that appellants negligently suffered their right of way, adjoining appellee's fence and meadow, to become foul with dry grass, and a locomotive of appellants whilst in charge of their servants, was run over their track, and fire was communicated therefrom, to the dry grass on their right of way, and from the same to the fence and meadow of appellee, and burned one thousand rails and twenty acres of meadow, appellee's property, and destroyed the same. To this declaration appellants filed a plea of not guilty.

It appeared from the evidence, on the trial, that appellants owned the road running through appellee's farm, and that there was dry grass and weeds on their right of way, and that fire was communicated from a passing engine, operated by the company, on the 28th of August, 1866, to the grass on their right of way, and ran thence into the fence and meadow of appellee; that eight hundred rails were destroyed, and sixteen acres of meadow burnt over; that there was dry grass in the meadow adjoining to the right of way. Appellants introduced evidence from which it appeared that the engine, from which the fire was communicated, was furnished and properly equipped with the most approved mechanical contrivances known, to prevent the escape of fire, which was in good repair.

The case was submitted to the jury without instructions from the court, and they found a verdict in favor of appellee, for $98.40 damages. Appellants entered a motion for a new trial, which was overruled by the court, and a judgment

rendered on the verdict; to reverse which, the case is brought, by appeal, to this court, and the overruling of the motion for a new trial is assigned for error.

This record presents the question, whether a railroad company, having provided and used the best known contrivances to prevent the escape of fire from their engines, are, nevertheless, liable for not removing, or preventing the accumulation of, dry grass and weeds on their right of way, to prevent fire from communicating to adjoining lands. In other words, are such bodies bound to cultivate, mow, or otherwise prevent the growth of vegetation on their right of way? Is it *per se* negligence to permit dry grass and other vegetable matter, combustible in its nature, to remain on the side of their track? That such bodies, like individuals, are required, by the law, to use all reasonable precautions to prevent injuries to others, there can be no question. All persons are required to so use their own as to prevent injury to others, and this rule applies, to the same extent, and no farther, to corporate bodies as it does to natural persons. It then follows, that appellants were bound to use the same degree of effort to prevent injury to others, whilst exercising their franchises and corporate privileges, as an individual is under to other persons.

Again, it is the settled law of this court, that negligence is relative, and if both plaintiff and defendant are negligent, a recovery can not be had, unless the defendant has been guilty of gross negligence, amounting to willful misconduct. If a plaintiff is guilty of such negligence as necessarily contributes to the injury, it must appear that the defendant was guilty of a higher degree of negligence. When the plaintiff, by his own carelessness, has contributed to produce the injury, the defendant is not absolved from all further care and effort, on his part, to avoid the injury, but is still required to use all reasonable efforts to prevent its recurrence, and failing to do so, he must be held liable. But, in the very nature of things, it must be, that where the plaintiff has, by his negligence

increased the hazard, it becomes more difficult for the defendant to avoid the injury, and, unless it appears that he could have done so, he will not be held liable.

In the case of *The Illinois Central R. R.* v. *Mills*, 42 Ill. 407, it was said, that it was not an indispensable conclusion of law, that a railway company is guilty of negligence, to be inferred from the fact that fire ignited in dry weeds or grass upon their land; but that it is a question of fact to be determined by the jury, in view of the extent to which the weeds and grass have been permitted to accumulate on their right of way, the season of the year, and all other circumstances affecting the liability to fire. It was also held, that the company were bound to use the same diligence in removing such weeds, grass and other combustible material, from exposure to ignition by the locomotive, that a cautious and prudent man would use in reference to combustible matter upon his own premises, if exposed to the same hazard from fire as dry grass upon the side of the railway.

In that case, as in this, it was contended, that it was negligence *per se* to permit dry weeds and grass to accumulate on the right of way of a railway company; that its presence there created a legal presumption of negligence. But it was held to be error to so instruct the jury, and the judgment was reversed for that error. That such an accumulation may be evidence from which negligence may be inferred, is certainly true, under some circumstances; but we are aware of no legal principle which has declared it, of itself, to be negligence. The statute has not required such bodies to remove such a growth, nor has any decision held it to be a legal duty. Such bodies, like individuals, are bound to use reasonable precautions to prevent the escape of fire from their engines and premises, and so are individuals, and the one is under no greater obligation than the other; both are under the same obligation, resulting, alone, from the rules of the common

law, and, in each case, the question of negligence must depend upon the circumstances which surround it.

In this class of cases both parties are required to use care and diligence to avoid the loss; and it should appear that a plaintiff, suing for a loss from the escape of fire from the engine or railway grounds, has not contributed to the injury by equal neglect of duty. If he has permitted his lands, adjoining the right of way of the road, to become foul and highly calculated to ignite, this would be evidence from which a jury would be warranted in the inference that he had been guilty of negligence, contributing to the injury. We are at a loss to perceive why a railroad company should be required, in the absence of statutory requirement, to mow their right of way, and the adjoining land owner be permitted to let his lands become foul, and liable to ignite; on the contrary, both should be required to use all reasonable efforts to prevent the escape and spread of fire. Where the corporation has adopted, and have in use and in proper repair, the best known mechanical appliances to prevent the escape of fire, and a land owner is equally negligent in permitting grass and weeds to accumulate on his adjoining land, as the company upon their right of way, no reason is perceived why it should not be held that the land owner has contributed to the loss.

If adjoining land owners were to permit such combustible materials to accumulate, and fire was, accidentally or unavoidably, to get into the field of one, and thence communicate to the other, would any one say that they had not contributed equally to the loss? It would not be contended that one was any more bound to remove the dry grass and weeds from his field than the other. And, in such a case, each takes the hazard of accidents. Nor are we able to perceive the difference in that and the case at bar. Having provided the best known contrivances, and having employed them, and kept them in good order, the escape of fire is accidental, and where both parties have permitted their adjoining lands to accumulate

combustible material, and fire escapes, whether on the right of way, or from the field of the owner, we can not see that the company should be held liable for negligence.

In this case the railroad employed the best known machinery to prevent the escape of fire, and the evidence shows that it was in good order at the time. It also appears that there was combustible material on the land of appellee, adjoining the right of way of appellants. And, as each party was under obligation to use all reasonable precautions to prevent the injury, we do not see that the negligence of appellants was so much greater than that of appellee as to render them liable. Had appellee taken reasonable precautions to guard against the injury, and the company had omitted any duty, such as neglecting to use spark arresters, or those employed had been in bad condition, then the case would have been different; but, in this case, we think the evidence fails to disclose a right of recovery by appellee, and the judgment of the court below must be reversed.

*Judgment reversed.*


Dissenting opinion by Mr. Chief Justice Breese :


I do not concur in the reasoning, or conclusions, in the above opinion. I adhere to the views I expressed in the case of *Bass* v. *C. B. & Q. R. R.*, 28 Ill. 9, and in the separate opinion filed by me in the case of the *Ill. Central R. R. Co.* v. *Mills*, cited *supra*.

I hold there is but slight, if any, analogy between a railroad company and individuals, in the pursuit of their ordinary avocations. A much higher degree of care and diligence is, and should be, required of the former than of the latter, as the former are in the exercise of a most hazardous calling, demanding the highest possible degree of care. To define the exact limits of responsibility, in which a railroad company should be included, and the precise measure of care and diligence which the law

imposes upon them, to prevent damage, from their engines, of the kind in question, may not be entirely practicable.   Carriers of passengers by railroads, all the cases agree, are bound to the utmost diligence which human skill and foresight can effect, and if injury occurs, by the slightest omission in regard to the highest perfection of all the appliances of transportation, or the mode of management, at the time the damage occurs, the company is responsible.

Such, in my judgment, should be the rule in cases like the one before us.   The majority of the court go but part of the way in their requirements, that is, that the company shall only provide the best known and approved mechanical contrivances to arrest the sparks from the engine.   I go further, and hold they should be required to keep their roadway free and clear of combustible matter.   This can easily be done, and with light expense, and which the early prairie settlers of this State did, each recurring autumn, by firing around their fields and buildings, in anticipation of the annual firing of the prairies.   Had the roadway been clear of weeds and grass, and other dry herbage, easily ignited, this injury would not have occurred.   To say the plaintiff was equally negligent, by allowing his fields to go to fallow, and, to protect himself against a railroad, he must change his system of husbandry, is going further than the law, in my opinion, requires.

Holding that railway companies must keep their way free of combustible matter, it is negligence *per se* to permit it to remain, subject to be fired in a second of time, by any passing engine, even though the engine is provided with the best spark arresters.   Such contrivances are liable to injury, and not perceived, perhaps, until the engine has performed its trip.

Now, if the law be, as it certainly is, that railroad companies, in carrying passengers, are bound to the utmost care and diligence which human skill and foresight can effect, so, for the safety of the property of the citizen, should they be held to the same degree of care and diligence, and while

they neglect to do any thing which can be readily and cheaply done to lessen the hazard of danger and loss in this direction, they should be required to do it. Whilst they suffer their roadways to become foul and combustible, so long will juries find them guilty of negligence, even though they may have the most approved spark arresters. The juries will say, and properly, you could have done more toward lessening the danger of the citizen; you could have kept your roadway free and clear of combustible matter — from that the fire was communicated to the property, and you ought to respond in damages. It is not just to say, the citizens had fallow lands adjoining the railway, and kept them fallow, and by so keeping them contributed to the accident; that such a system of farming was negligence, and he ought to suffer all the losses consequent thereon.

I hold that railway companies shall not only use the most approved spark arresters, and other proper mechanical contrivances, but in addition, shall keep their roadway free of combustible matter, and do every thing else which ordinary human ingenuity can suggest for the safety of the property of the citizen. Whilst they leave undone any thing they might reasonably do, to prevent accidents and losses, they should be held responsible for all damages resulting therefrom. This seems to me common sense, and a just foundation on which to place this and like cases.

I am of opinion the verdict and judgment are right.