. THE KANSAS PACIFIC RAILWAY CO. v. JOHN H. BUTTS.

1. NEGLIGENCE, *when a question of law*. When the facts are agreed, what constitutes negligence is a question of law, and this court can determine what is shown in the facts as readily and as fully as the district court.

2. ———— *Facts fail to show Negligence*. When a railway company is authorized to operate its line with locomotives propelled by steam, generated by fire, and uses a locomotive, provided with all the most approved appliances in use for preventing injuries by the escape and communication of fire therefrom, in good order, and operated by competent and careful servants of the company, and owing to a high wind fire escapes, and spreading, burns the property of another, this is not negligence on the part of the company.

3. ———— *Standing Weeds and Grass*. It is not negligence *per se* for a railway company to permit standing grass and weeds to remain on its right of way.

## Error from Davis District Court.

BUTTS sued the *Kansas Pacific Railway Company* to recover damages alleged to have been sustained by the burning of a corn-crib, some corn, a corral and other property averred to have been occasioned by fire carelessly communicated from a passing locomotive engine of the defendant.

The question was tried upon an agreed statement of facts, which are set forth in full in the opinion of the

court. From these facts the court below decided that the defendant was guilty of negligence, that such negligence occasioned the injury, and gave judgment for the plaintiff. The defendant excepted and brings the case here by petition in error.

*Edgar W. Dennis*, for plaintiff in error:

1. The plaintiff below relied upon the supposed common-law liability. It is understood that the statute "To prevent the firing of woods, marshes and prairi̇  ̇ʌ," (ch. 118, Gen. Stat.,) is not looked to; so that statute may be dismissed from consideration. There is no special statute in this State, as in Massachusetts, etc., respecting fires from railway engines. This case is to be dealt with irrespective of any statute.

The sole question is a question of law, whether, on the agreed facts, the law attaches negligence to the defendant. This court has held, in accord with the authorities, and with principle, that in regard to negligence, if the proof is all one way, or if, as in this case, there is no controversy about the facts, then it becomes a question of law; and that it is also a question of law what degree of care and diligence on the one side, and of negligence on the other, will entitle the plaintiff to recover. *U. P. R. Co. v. Rollins*, 5 Kas., 167.

If the plaintiff below was entitled to recover, then no individual citizen is safe from being compelled to pay for the consequences of accidental fires of incalculable extent; and every railway company in this State becomes practically the insurer of all the property along its line, near or remote.

2. On the facts, negligence is not imputable to the defendant below. The action is predicated upon a supposed breach of the law of the maxim " *sic utere tuo, ut alienum*

*non lædas* "—so use your own as not to injure another's. But it does not follow that, because a party receives disadvantage from the exercise of a right by another, therefore an action lies. For, as Austin in his Philosophical Lectures on Jurisprudence (p. 829) observes, " the exercise of a right is often accompanied with the infliction of positive evil tó another."

2. In the United States, from the first, no presumption of negligence arose ·from the fact of fire being communicated by engines; and the approved doctrine is believed now to be, not only that the rule of contributory negligence applies in full force, but that, if a railway company supplies its machines with all known proper appliances, and provides for operating them competent and careful employes, it is not liable, in the absence of substantive proof either that the machines were out of order or that the employes were negligent. Pierce on Railways, ch. 14; Shear. & Red. on Neligence, ch. 20; 1 Red. on Railways, ch. 17; 15 Conn., 124; 18 Barb., 80; 32 N. Y., 350; 8 Penn. St., 366; 14 N. Y., 218; 3 Man. & Gran., 515; 37 Mo., 287; 42 Ill., 407; 47 Ill., 497; 35 N. Y., 210; 31 Ind., 143.

3. The question involved is of serious moment to the people of Kansas, inasmuch as a sanction of a recovery here carries with it the enunciation of a liability for accidental fires, as between citizen and citizen, which cannot be contemplated without concern.

The case at bar presents about the same state of facts likely to constitute the proof in a large majority of instances of fires taking from locomotives, at the present day when almost all engines are completely equipped. It is therefore a fair case for the determination in this state of the important question involved.

The defendant below, under the agreed statement was

exercising, in a reasonable manner and with great caution, a lawful right, when a superhuman agency intervened, and "by this means," as is conceded, the mischief was done.

An action does not lie at common law for the reasonable use of one's right, though it may be to the injury of another; and the case at bar is a case of *damnum absque injuria*.  Pierce on Am. Railway Law, ch. 14, p. 312.

*Gilpatrick & Gilbert*, for defendant in error:

1. The defendant below answers by general denial only.  But in the facts agreed there are some specific affirmative matters stipulated in favor of the defendant below; but we contend that any facts stipulated in favor of plaintiff in error not set up by way of defense in the answer are to be disregarded.  The stipulation is, " that the issues upon the *pleadings* be submitted to the court upon the following agreed statement of facts."  The " issues upon the pleadings " are, an allegation of negligence and a simple denial.  The position of the parties therefore is, that, so far the facts agreed go to sustain the allegations of the plaintiff, they are to be considered, and so far as they might have tended to constitute a defense, if properly set up, they are to be disregarded for want of a sufficient answer.

2. It being the duty of the court to determine the question of negligence, as an ultimate fact, the judge found in favor of the defendant in error; and that finding cannot be disturbed by this court, unless it is found that there was no evidence to sustain such finding.  The judge was constituted the judge of the facts: Gen. Stat., civil code, § 290; *Bayer v. Cockrill*, 3 Kas., 282, 294; *U. P. R. Co. v. Convers*, 4 Kas., 206, 208.

The question is not whether this court would have come to the same conclusion, as to the facts; but whether there is some evidence upon which the mind of the judge below might, without the imputation of partiality or corruption, become satisfied as to his finding. The parties chose their own umpire, and his finding is conclusive unless impeached for some of the above named causes.

Now if for want of a sufficient answer, the court are to disregard the evidence offered in behalf of the plaintiff in error, as we contend, the case is one of wantonness, by which the property of the defendant in error was destroyed under circumstances forbidding all denial of carelessness.

3. The case finds that the "engine in use was provided with all the most approved appliances," etc.; that is to say, with such as the builders affix, as best calculated for safety. But does it thence follow that it is prudent to drive such a machine through the grounds and near the buildings of the people in a high wind, and amid highly combustible rubbish, like that named in the case? It might be very safe in the east, where all grass and everything but the coarse stalks of weeds usually is either cut or grazed from the surface. And yet no one would say that it was prudent to fire and run such a machine through a magazine of gunpower; and for the same reason the preventive apparatus, which the builders in the east think sufficient, may be wholly insufficient to satisfy the requirements of ordinary care here, where the machine runs in the midst of a profusion of dry grass of a highly combustible nature.

It is not admitted that "no precaution is effectual to prevent" the embers and coals from escaping. It is denied that the catastrophe was the result of an inevitable casualty, happening "from the intervention of a superior

agency—a superhuman and resistless force." The prob-
ability of the event must have been foreseen by a man of
ordinary understanding, and the conflagration could have
been prevented by means within the reasonable power of
the plaintiff in error, either by injecting water into the
ash-pan, or by properly inclosing it to prevent the escape
of fire. It was not sparks or cinders that were blown
from the ash-pan, and thus set the fire. " Quantities,"
and that too of " live coals and embers," not sparks;
dangerous materials, which the plaintiff in errer, by
reasonable care, could have controlled, or disarmed of
their power for mischief; and they were blown " into
dry grass and weeds standing upon the right of way, and
scattered along and lying in the ditch," etc., which " were
ignited in several places," etc. It was therefore no casual
instance of omission, but it was a continuous sowing of
fire, which kindled wherever it touched so far as the
materials of danger extended.

4. A railroad company should be held to the highest
degree of caution, because the people, whose premises
are exposed, are placed in that position without their
own consent; the company pursue their business for
their own profit, without regard for the interests of the
people, and prevention by anything which contiguous
or neighboring proprietors can do, is absolutely im-
possible.

5. As to contributory negligence: Will this court
make a rule, which shall require the farmer, contiguous
to or in the vicinity of a railroad, to pursue a course of
husbandry different from that which his own convenience
or profit would dictate, in order to guard against the fire
of the company, which by needful caution they might
restrain? The doctrine of contributory negligence, as
insisted upon by the plaintiff in error, would require the

owners of contiguous lands, however extensive, to remove from the surface all dry grass in which fire will run. And if this is so as to contiguous proprietors, it is so as to neighboring proprietors, whose lands are separated. 98 Mass., 414. Ordinary care only is required of him who is to avoid contributory negligence. Contributory negligence is that which so operates that the other party by ordinary and reasonable care and exertion, could not avoid the catastrophe; and if the party implicated, by ordinary and reasonable care and exertion, could have averted danger, he is liable, notwithstanding the negligence of the party complaining. '

The opinion of the court was delivered by

KINGMAN, C. J.: The plaintiff below brought his action to recover damages alleged to have been sustained by the burning of a corn-crib, some corn, a corral, and other property of his, by fire averred to have been carelessly communicated from a passing locomotive engine of the defendant. The answer was a general denial. The case was submitted to the court, without a jury, upon an agreed statement of facts, of which the following is a copy:

"At the time of the happening of the alleged grievances complained of, the defendant was a railway corporation existing by law authorized to operate a railway over the line described in the petition, and to haul thereon at all times trains of cars drawn by locomotives propelled by steam generated by fire; that at the time and place mentioned in the petition, about five or six miles west of Junction City station, a locomotive engine of the defendant passed westward drawing a train of cars and run in the usual manner on a regular trip in the defendant's lawful business; that a high wind was blowing at the time; that by this means quantities of live coals and embers were blown from the ash-pan of said engine into

dry grass and weeds standing upon the right of way, and scattered along and lying in the ditch beside the track of the railway of the defendant, whereby the same were ignited in several places within the distance of one-half mile; that such fire so kindled, and driven by said wind ran rapidly to dry grass and weeds standing on the premises of the plaintiff immediately adjacent, and spreading on said premises produced the damages complained of; that said engine was provided with all the most approved appliances in use for preventing injuries by the escape and communication of fire therefrom to property or combustible material upon or adjacent to the line of the railway, including an appliance for conducting water to the ash-pan, and was in good order and was operated by competent and careful servants of the defendant; that from engines of the same make, and properly constructed and operated, burning coals and embers are sometimes blown by a high wind; and that the plaintiff suffered injury from the destruction of his property by said fire to the amount of five hundred dollars."

From this agreed statement of facts the court found "that the defendant negligently destroyed the property of the plaintiff as set forth in the petition," and assessed his damages accordingly. The sole question below, and in this court, is a question of law, and that is, whether, on the agreed facts, the law attaches negligence to the defendant. And here it may be proper to correct an

1. Negligence, when a question of law. error into which the defendant in error has fallen for want of proper consideration of the question. He contends that only so much of the foregoing facts are to be considered as tend to support the plaintiff's petition; that the defendant could not under his general denial give in evidence any of the facts that show a want of negligence. It need not be determined whether such evidence was admissible under the pleadings, because there was no exception, and all the agreed facts went to make up the evidence in the case. It is too late to object to any part of it in this court as irrelevant.

Again, remarks made in other cases that this court will not weigh evidence and reverse judgments because the preponderance seems to us to be against the verdict, be-cause we have not the same opportunities to observe the bearing of witnesses, and scrutinize the manner of giving their testimony as have the jury, have no application to this case. Here the facts are agreed, not controverted. They are not testimony to be weighed, but facts to be considered; and this court can do that as well as the court below. It may be true that when in great doubt, in such a case, this court will give proper weight to the judgment of the court below; but it certainly will not allow that judgment to control the positive opinions they may form. These remarks are made in answer to a large part of the argument of the defendant in error, and to remove any doubt if any were really entertained as to the exact status of such a case in this court.

The point to be decided then is, whether the law attaches negligence to the plaintiff in error on the facts of this case. "So use your own, as not to injure another's," has become a maxim in our laws, and is ap-

2. Negligence; care; skill; as questions of fact.

plied to regulate the conduct of individuals as to the use of their property, and is enforced by giving compensation for injuries wrongfully occasioned by a violation of the principle which the maxim involves. The difficulty lies in giving proper application to the principle rather than in any uncertainty in the principle itself. It is true, that it is *prima facie* competent for any one to enjoy and use his property as he chooses; but he must however so enjoy and use it as not to affect injuriously the right of others. These are general truths; but when clearly establishe. rights are such as, if exercised, injury may result to others, then it must be considered whether or not their exercise be not restrained

by the existence of some duty impose'd. It does not always or necessarily follow that, because a party receives disadvantage from the exercise of a right by another, therefore an action lies. In the case before us we see a railway company, with the conceded right to operate a railway, using engines propelled by steam generated by fire in so doing. There was also an adjoining proprietor with the right to his property, and to enjoy it unmolested and undisturbed. A part of this property has been destroyed, and the immediate cause is the operating of the railway company's road. There is a loss. The road is the cause. The inquiry arises, by whose fault? The burden of proof is on the complaining party; the party whose property has been destroyed. Of this there is no question. The English courts have held that proof that the fire was communicated from the engine of the company is sufficient *prima facie* proof to throw upon the defendant the burden of showing that there was no want of skill, care, or diligence in the construction or management of the engines: *Piggot v. The Eastern Counties Railway Co.*, 54 Eng. Com. Law Rep., 228. In this country the courts have with great unanimity, where the matter has not been regulated by statute, held that the mere fact that a fire is caused by a locomotive engine does not raise the presumption of negligence. In this case, we need not, and do not propose, to decide which is the better rule. The evidence is the agreed facts; and they show that the company had supplied its engine with all the most approved appliances in use for preventing injuries by the escape and communication of fire therefrom to property or combustible material upon or adjacent to the line of the railway, which was in good order, and was operated by competent and careful servants of the defendant. It also appears as a fact, that from engines

of the same make and properly constructed and operated, burning coals and embers are sometimes blown by a high wind. It thus appears that no care or precaution that science or skill could provide was omitted in the construction of the engine to guard against such accidents as the one that occasioned the loss in this case; and any possible want of care or diligence on the part of the employes, as to this matter, is negatived by the facts. In such a state of facts is the railway company liable? It is not denied that the company was in the pursuit of its legitimate business, pursuing it in exact conformity with its rights, and conducting it with scrupulous care and skill. If they are responsible for the loss, then it must be because they are insurers, and not because of any careless, unskillful, or improper use of their own property. This would be to apply to railway companies a liability never recognized as resting upon individuals, and we are referred to no case or principle which would make the company liable in this case. The books are full of cases holding the reverse; we refer to some of the most carefully considered: *Burroughs v. Housatonic Railway Co.*, 15 Conn., 124; *Rood v. N. Y. and Erie Railway Co.*, 18 Barb., 80; *Griser v. Phil. & Read. R. Co.*, 8 Pa. St., 366; *Sheldon v. Hudson Riv. Ry. Co.*, 14 N. Y., 218; *Smith v. H. & St. Jo. R. R. Co.*, 37 Mo., 287; *The Ill. C. R. Co. v. Mills*, 42 Ill., 497; *The O. & M. R. Co. v. Shanefelt*, 47 Ill., 497; *Ryan v. N. Y. Cent. R. R. Co.*, 35 N. Y. 210; *Ind. & Cin. R. R. Co. v. Paramore*, 31 Ind., 143; Pierce on Railways, 313. The plaintiff in error was exercising in a reasonable manner and with great caution a lawful right, and in so doing an accident proceeding from his train caused the loss. For this the plaintiff in error cannot be held liable.

We have purposely omitted so far any consideration of

how far the " standing grass and weeds upon the right of
3. Grass and     way, and scattered along and lying in the
  weeds on right
  of way.        ditch beside the track of the railway " of the
plaintiff in error of itself constitutes negligence.    The
company and adjoining owner both had upon their prem-
ises the same combustible material, and each contributed
to the spread of the fire that occasioned the loss; and it
is an almost universal fact, observable everywhere in our
State, that the same combustible materials are found in
almost every section of the State, the natural result of a
rich soil, and uncropped growth.    To hold the existence
of such a condition of things negligence, would be to de-
clare a liability for accidental fires, as between citizen and
citizen, heretofore unknown to the law, and which we do
not feel authorized to incorporate into our code.    This
very question was decided in Illinois in the cases of the
*Ill. Cent. Ry. Co. v. Mills*, and the *O. & M. R. R. Co. v.
Shanefelt*, supra; and those decisions were but the enun-
ciation of well-known principles applied to a given state
of facts.

The judgment must be reversed, with directions to
enter judgment on the facts for the defendant, the plain-
tiff in error in this court.

All the Justices concurring.